# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

KELLEY S.[1],

                                        Plaintiff,

              v.                                        5:17-CV-1234 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
ELIZABETH D. ROTHSTEIN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 5).

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on May 8, 2014, and protectively filed an application for supplemental security income ("SSI") on August 31, 2015. (Administrative Transcript ("T.") 10, 265-66). Both applications alleged disability beginning July 1, 2013. (*Id.*) After plaintiff's

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

claims were initially denied, Administrative Law Judge ("ALJ") David J. Begley conducted a hearing on March 25, 2016, at which plaintiff and Vocational Expert ("VE") Mark A. Pinti testified. (T. 98-151, 156-69, 176).

In a decision dated June 10, 2016, the ALJ found that plaintiff was not disabled. (T. 7-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on September 25, 2017. (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than

3

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

As of the date of the March 25, 2016 administrative hearing, plaintiff was 31 years old. (T. 105, 265). She currently resided with her mother and a twin brother, but had recently lived independently, with a boyfriend. (T. 108). Plaintiff had completed the tenth grade in special education classes, before leaving school. (T. 110). While in school, she had an Individualized Education Plan ("IEP") to address difficulties with

math, and obtained additional time and assistance on tests due to reading problems. (T. 110). After leaving school, she had made two unsuccessful attempts to obtain her G.E.D. (T. 109).

Plaintiff's previous employment included work as a veterinary assistant, parts runner at an automotive repair shop, and cashier at a grocery store. (T. 302-308). She reported that she had difficulties at each of these positions due to problems counting change and keeping up with the pace demanded by customers. (T. 107-108, 129-31, 302-308). Her most recent employment was as a security guard in 2011. (T. 105). She testified that she had difficulty meeting the obligations of this job, but that she was terminated for reasons unrelated to her impairments. (T. 105, 131).

Plaintiff had suffered a series of knee injuries that required surgery, most recently in 2004. (T. 644-45). She still experienced an aching knee pain if she remained in one position too long, or walked long distances. (T. 644). In 2012, plaintiff fractured both elbows in a fall, and underwent several surgeries. (T. 127, 392, 644). Her left elbow[2] suffered the most significant injuries, and she testified that she still experienced frequent pain and numbness in her left elbow and hand. (T.106, 127, 460, 644). The pain increased with lifting, holding her left arm in one position or putting any pressure on the elbow, such as leaning on the arm of a chair. (T. 117, 644). She received frequent cortisone injections into her left elbow to reduce the pain. (T. 117). Plaintiff had also been diagnosed with anxiety and depression that stemmed from several traumatic events in her life. (T. 124-25). She had been treated with both medication

---

[2] Plaintiff is right-handed. (T. 106, 644).

and counseling since at least 2011. (T. 111-112, 121-123).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 12-21). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  THE ALJ'S DECISION

After finding that plaintiff met the insured status requirements through June 30, 2015, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 1, 2011. (T. 12). Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: osteoarthritis (status-post left elbow surgery); status-post right knee surgery; bipolar disorder; and anxiety. (T. 12-13). At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 13-15).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of light work. (T. 15-21). Specifically, he found that plaintiff was limited to occasional pushing, pulling and overhead reaching with the left upper extremity; was prohibited from climbing ladders, ropes, and scaffolds; could occasionally climb ramps and stairs, balance, crouch, and crawl; and should avoid concentrated exposure to extreme heat and cold, humidity, wetness, slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames. (T. 15). In making the RFC determination, the ALJ stated that he considered all of the

plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 96-4p. (T. 15-16). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 16).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 16-17). The ALJ then determined that plaintiff was unable to perform her past relevant work. (T. 21). Relying on the VE testimony, the ALJ determined at step five that plaintiff would be able to perform jobs that existed in significant numbers in the national economy. (T. 40-41). Therefore, the ALJ determined that plaintiff had not been under a disability from the alleged onset date of August 1, 2011 through the date of his decision. (T. 21-22).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 17-25) (Dkt. No. 11).

2.    Plaintiff's impairments met or equaled the severity of Listing 12.05. (Pl.'s Br. at 25-26)

3.  The ALJ failed to consider plaintiff's documented difficulties with math in his RFC determination or his step five determination. (Pl.'s Br. at 22-23).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-21) (Dkt. No. 14).  For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.  RFC EVALUATION/TREATING PHYSICIAN

### A.  Legal Standards

#### 1.  RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make

conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors

concerning claimant's functional limitations and restrictions due to symptoms. 20
C.F.R. § 404.1529(c)(3), 416.929(c)(3).

## B. Application

As stated above, it is the province of the ALJ to resolve genuine conflicts in the
record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile
explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 67
(2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the
ALJ resolved conflicts between the objective medical record, medical opinion evidence,
and plaintiff's testimony by assigning the greatest weight to that evidence that he
deemed most consistent with plaintiff's overall treatment record and activities. In
doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made
an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F.
App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond
with any of the opinions of medical sources, ALJ was entitled to weigh all of the
evidence available to make an RFC finding that was consistent with the record as a
whole). In light of the ALJ's analysis of plaintiff's medical history, the relevant
medical opinions, and plaintiff's activities of daily living, this court concludes that his
RFC determination was supported by substantial evidence, as summarized below.

### 1. Physical Limitations

The ALJ found that plaintiff could perform less than the full range of light work.
(T. 15). Plaintiff argues that this RFC determination did not properly account for the
limitations associated with a left elbow injury that required multiple surgeries and

resulted in ongoing pain, stiffness, and limited use of plaintiff's left arm. (Pl.'s Br. at 20). This court disagrees, and concludes that the ALJ's assessment of plaintiff's elbow injury and the resulting limitations were supported by substantial evidence.

In assessing the functional limitations associated with plaintiff's elbow impairment, the ALJ gave "some weight" to the opinion of Dr. Kalyani Ganesh, who performed a consultative examination of plaintiff on July 29, 2014. (T. 18-19, 644-48). During the examination, Dr. Ganesh found that plaintiff's left elbow showed flexion of 120 degrees[3], and her right elbow showed flexion of 140 degrees. (T. 647). She had full range of motion in her shoulders and wrists bilaterally. (*Id.*) Her left elbow showed some tenderness, and Dr. Ganesh estimated that the strength in her left and right upper extremities were both 4 out of 5. (*Id.*) Based on that examination, Dr. Ganesh opined that plaintiff had "moderate" limitations for lifting, carrying, pushing, and pulling with her left arm. (T. 648). Such limitations have typically been considered consistent with the demands of light work. *See Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-638 (DNH), 2011 WL 2357665, at *6-7 (N.D.N.Y. May 20, 2011) (consultative examiner's opinion that plaintiff appeared to have moderate limitations with regard to bending, lifting, and prolonged standing and walking was consistent with ALJ's determination that plaintiff could perform most forms of light work); *see also Jordan v. Comm'r of Soc. Sec.*, 2018 WL 1388527, at *9-10 (S.D.N.Y. Mar. 19, 2018) (ALJ's determination that plaintiff could perform light work was supported by substantial evidence where consultative

---

[3] "Normal" elbow range of motion is around 150 degrees, for individuals without medical conditions affecting their joint mobility. https://www.cdc.gov/ncbddd/jointrom/index.html

examiner's opinion of "moderate" limitations was consistent with objective medical findings in the record).

The ALJ also noted that Dr. Ganesh's opinion was consistent with medical evidence in the record that showed that plaintiff's left elbow had improved with treatment. (T. 18-19). For example, in August 2014, a physical examination showed that plaintiff was lacking about fifteen degrees of full extension and flexion in the left elbow, results that were slightly better than those found during the consultative examination. (T. 647, 869). Other general examination notes from the same period, referenced in the ALJ's decision, describe plaintiff as able to move "all extremities spontaneously and purposefully," and document an improving range of motion in the left elbow. (T. 756, 884, 894). The court also notes that one of plaintiff's treating physicians, Dr. Kevin Setter, opined that she had no significant limitations with respect to repetitive reaching, handling, or fingering. (T. 915). The ALJ ultimately assigned "little weight" to Dr. Setter's full opinion because other portions were inconsistent with the treatment record.[4] (T. 18).

Plaintiff argues that the ALJ's analysis ignores treatment notes from November 2015 that describe plaintiff as experiencing increased elbow pain, and the accompanying physician's recommendation that she use a sling for comfort. (T. 894). The ALJ actually cited these notes for their description that plaintiff's left elbow was "near full range of motion with flexion extension." (T. 18, 894). In addition, these notes

---

[4] In particular, the ALJ discounted Dr. Setter's opinion that plaintiff's impairments would cause her to be absent from work more than three times per month. (T. 18, 916).

make clear that plaintiff's elbow pain was aggravated from a recent fall, not a deterioration of plaintiff's overall condition. (*Id.*) Plaintiff received one cortisone injection for the pain at a follow-up visit, and subsequent treatment notes did not reflect any ongoing restrictions or limitations in her elbow. (T. 898-901, 904-911).

In addition to the medical evidence, the ALJ also considered plaintiff's daily activities in determining her RFC. (T. 16-18). Plaintiff reported that she could perform some household chores such as laundry, dusting, vacuuming, and cleaning toilets. (T. 16, 295-96). She could prepare simple meals on a regular basis. (T. 295). Although she had difficulty remembering and following directions, she had no physical restrictions that prevented her from driving a car, and regularly drove to appointments or shopping. (T. 16, 109, 139-40, 296).

The ALJ also noted that plaintiff's statement that she enjoyed hunting, and her description of a recent hand injury sustained while she was hunting, were inconsistent with her testimony regarding significant physical limitations. (T. 17-18). In particular, the ALJ noted that an ability to hunt was consistent with other evidence that plaintiff was able to walk without a limp.[5] (T. 17, 900). Plaintiff contends that the ALJ ignored plaintiff's statements that she had a bench in some nearby woods to use while hunting. She also cites external evidence (not submitted to the ALJ) regarding the limited recoil of her 20-gauge shotgun, that would presumably make the firearm easier to use despite

---

[5] During her July 29, 2014 consultative examination, Dr. Ganesh observed that plaintiff had a limp favoring her right side. (T. 646). During a November 24, 2015 evaluation for complaints of hip pain, the treating physician observed that plaintiff was walking without a limp. (T. 900).

her elbow impairment. (Pl.'s Br. at 21). However, even if plaintiff took measures that made it easier to hunt, she has not demonstrated that it was unreasonable for the ALJ to connect the physical activities common to hunting with the standing, walking, lifting, reaching, bending and other physical requirements set forth in the RFC.

## 2. Mental Limitations

Plaintiff also contends that the ALJ erred by failing to properly account for plaintiff's mental limitations in his RFC determination. (Pl.'s Br. at 21-26). This court finds that the ALJ's consideration of the impact of plaintiff's anxiety, depression, and other mental impairments on her RFC was supported by substantial evidence.

In reaching the mental RFC, the ALJ assigned "some weight" to the March 16, 2016 opinion of Dr. Mohammad Iqbal, a treating psychiatrist. (T. 19, 927-32). Dr. Iqbal opined that most of plaintiff's mental abilities should be categorized as "fair," including maintaining regular attendance, understanding and carrying out simple instructions, making simple work-related decisions, completing a normal workday, and sustaining an ordinary routine without supervision. (T. 19, 930-31). As defined in the Medical Source Statement prepared by Dr. Iqbal, the term "fair" described an "[a]bility to function in this area is seriously limited, but not precluded." (T. 930). Although the form requested additional explanation for limitations that fell within the "fair" or "poor" categories, Dr. Iqbal did not complete this portion of the evaluation. (T. 930-31). However, he did opine that plaintiff had "moderate" restrictions on activities of daily living, and "moderate" difficulties in maintaining social functioning. (T. 931). He further opined that plaintiff had a poor prognosis if her mental impairments were not

treated. (T. 929). The ALJ found that Dr. Iqbal's opinion was consistent with treatment notes showing that plaintiff's mental impairments were under control with medication and that plaintiff was "happy" with her current treatment regimen. (T. 19, 858, 935-37, 939-45).

The ALJ also found that Dr. Iqbal's opinion was consistent with the opinion of Dr. S. Bhutwala, a non-examining state psychologist. (T. 20, 164-68). Dr. Bhutwala opined that plaintiff had "moderate" limitations in her ability to understand and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities without a schedule, sustain an ordinary routine without supervision, interact appropriately with the general public, accept instructions and respond to supervisors, get along with peers, and respond to changes in the work setting. (T. 20, 164-66). An ALJ may rely on a non-examining state agency consultant's opinion when it is supported by other record evidence. *Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012).

The ALJ assigned "very little weight" to the July 25, 2014 opinion of Dr. Robert Kohlbrenner, a former treating psychologist. (T. 19, 442-46). Dr. Kohlbrenner opined that plaintiff was "severely emotionally disturbed and her capacity for stable interpersonal interactions is quite limited." (T. 446). He further opined that plaintiff was "an extremely poor candidate for any type of consistent competitive employment." (*Id.*) The ALJ found that Dr. Kohlbrenner's broadly generalized opinion was not consistent with plaintiff's mental health record, and was based on a limited treatment relationship of four visits between July 2013 and April 2014. (T. 19, 442). The ALJ

also noted that the "primary" purpose of these office visits was to administer mental health tests and discuss their results. (*Id*.)  Plaintiff contends that this oversimplifies the treatment relationship, but has not identified anything in the four pages of handwritten treatment notes included with Dr. Kohlbrenner's opinion that are inconsistent with the ALJ's findings.  In addition, despite the minimal weight assigned to this opinion, the ALJ's RFC incorporated the only specific limitation identified by Dr. Kohlbrenner when he limited plaintiff to occasional interaction with co-workers and supervisors, and no interaction with the general public. (T. 15).

The ALJ also considered the opinion of Dr. Thomas Lazzaro, a psychologist who met with plaintiff and conducted a series of intelligence and other tests in March 2016.[6] (T. 19, 917-22).  In his Medical Source Statement, Dr. Lazzaro opined that plaintiff had moderate limitations in her ability to understand and carry out simple instructions. (T. 920).  The ALJ assigned this portion of his opinion "some weight" because it was consistent with the opinions of Dr. Iqbal and Dr. Bhutwala, as well as plaintiff's treatment record and daily activities. (T. 19).

Dr. Lazzaro also opined that plaintiff had "marked" limitations in her ability to understand and carry out detailed instructions, make simple work-related decisions, interact with others, respond to changes in the work setting, and deal with work pressures. (T. 920-21).  He based these opinions on plaintiff's full scale IQ score of 69, which placed her "in the high end of the Mildly Mentally Retarded range of intellectual

---

[6] The ALJ discussed Dr. Lazzaro's opinion (Exhibit Nos. 23F and 24F) at length in the decision, but cited to an incorrect exhibit number (22F) for part of that discussion. (T. 19).

functioning." (T. 918, 921). The ALJ assigned "little weight" to these opinions, citing the lack of record support and the evidence indicating that plaintiff's mental impairments were well-controlled with medication. (T. 19). The ALJ also noted that plaintiff's educational record, which included an IEP for math, did not suggest the marked or extreme intellectual deficits described by Dr. Lazzaro. (T. 19, 318-25, 327-33). In addition, plaintiff had obtained a driver's license, took care of her personal needs and basic chores, worked at multiple jobs after leaving school, and had lived independently before returning to her mother's home. (T. 14, 19, 109, 113, 115, 126-28). She also reported that she used the internet to read the newspaper on a daily basis. (T. 298). The ALJ thus had substantial evidence to discount those portions of Dr. Lazzaro's opinion that he found inconsistent with the record.

As set forth above, the ALJ determined the functional limitations imposed by the combination of plaintiff's physical and mental impairments after considering the objective medical evidence, relevant medical opinions, plaintiff's daily activities and the hearing testimony. Therefore, this court concludes that the ALJ's determination that plaintiff was able to perform less than the full range of light work was supported by substantial evidence.

## VII. LISTED IMPAIRMENT

### A. Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition or conditions meet all of the

specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)). If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B. Application

In light of plaintiff's full scale IQ score of 69 on the test administered by Dr. Lazzaro, plaintiff contends that the ALJ erred by failing to consider whether plaintiff's impairments met or substantially equaled Listing 12.05, Intellectual Disorders. (Pl.'s Br. at 25-26). Plaintiff's representative raised the potential applicability of Listing 12.05 at her hearing, but the ALJ did not expressly consider it as part of his step three determination. (T. 13-15, 104-105).

The regulations governing Listing 12.05 were revised on September 26, 2016, with an effective date of January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 2016 WL 5341732 (F.R.), at *66138, *66167 (Sept. 26, 2016). Plaintiff's counsel relies on this revised rule in its brief. (Pl.'s Br. at 26). However, in its recent consideration of this question, the Second Circuit has applied the version of Listing 12.05 in effect at the time of a plaintiff's application. *See Bushey v. Berryhill*, 739 F. App'x 668, 672 (2d Cir. 2018). This court will do the

same.[7]

Under the version of Listing 12.05 in effect when plaintiff filed her disability application, a person is per se disabled if she exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The Listing, as set forth in relevant part at 12.05C, also stated that "[t]he required level of severity for this disorder is met when" the applicant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. at 152.

In addition, the applicant must also carry "her *separate* burden of establishing that she suffers from qualifying deficits in adaptive functioning," and that those deficits "initially manifested ... before age 22." *Id*. at 152 n.4, 153 (emphasis added). These deficits must arise from an applicant's cognitive limitations. *See Lawler v. Astrue*, 512 F. App'x 108, 110 (2d Cir. 2013). "Adaptive functioning refers to an individual's 'ability to cope with the challenges of ordinary everyday life.' " *Talavera*, 697 F. 3d at 153 (internal brackets omitted) (quoting *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) ). Thus, "'persons with an IQ in the 60s (or even lower) may still be able to hold

---

[7] When confronted with the same question, a recent decision from the Western District of New York applied the version of Listing 12.05 that was in effect at the time of the ALJ's decision. *See Redding v. Berryhill*, No. 16-CV-848, 2019 WL 91690, at *3, n.1. (W.D.N.Y. Jan. 2, 2019). In this case, the distinction is academic, because the same regulations were in effect at the time of plaintiff's May 8, 2014 application and the ALJ's June 10, 2016 decision.

a full-time job,' and are therefore not disabled, if their adaptive functioning is sufficiently intact." *Id*. (quoting *Novy*, 497 F.3d at 709).

Even if the court assumes that plaintiff met her burden of demonstrating that her low IQ score developed prior to age twenty-two, plaintiff has not demonstrated that she also suffered from qualifying deficits in adaptive functioning. In his decision, the ALJ marshaled record evidence in his RFC determination that showed that plaintiff was able to care for herself, live independently, drive, and engage in other daily activities that demonstrated had the ability to "cope with the challenges of ordinary everyday life." Therefore, plaintiff would not qualify under Listing 12.05, and the ALJ's failure to expressly consider that listing in his step three determination would be harmless error. *See Lawler*, 512 F. App'x at 111 ("While the ALJ did not base her conclusion about listing 12.05 on [plaintiff's] adaptive functioning, this determination and its corresponding support in the record renders remand futile.").

Similar analysis would govern even if the court applied the current version of Listing 12.05, as set out in plaintiff's brief.[8] In his decision, the ALJ found that plaintiff did not have extreme or marked limitations in the ability to understand, remember or apply information; the ability to interact with others; the ability to

---

[8] In relevant part, revised Listing 12.05B is satisfied when a claimant has a "full scale (or comparable IQ score of 70 or below on an individually administered standardized test of general intelligence . . . .," and "significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (a) understand, remember or apply information . . . . or (b) interact with others . . . or (c) concentrate, persist, or maintain pace . . . or adapt or manage onself." In addition, there must be evidence demonstrating or supporting the conclusion that the disorder began prior to the claimant reaching the age of 22. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,138, 2016 WL 5341732 (F.R.), at *66138, *66167 (Sept. 26, 2016).

concentrate, persist, or maintain pace; or the ability to adapt or manage onself. (T. 14-15, 23-26). As detailed above, the ALJ supported those conclusions with substantial evidence.

In sum, even if plaintiff exhibits some of the required signs and symptoms required by Listing 12.05, that does not meet plaintiff's burden at step three to show that she meets all the requirements of a particular Listing. Therefore, this court finds that the ALJ's determination that plaintiff's impairments did not meet or equal the severity of a Listed Impairment was supported by substantial evidence.

## VIII. STEP FIVE DETERMINATION

### A. Legal Standards

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert

is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper. *Id.* at 276-77.

### B.    Application

In order to determine whether there were jobs that existed in significant numbers in the national economy that plaintiff could perform, the ALJ asked the VE a hypothetical question that mirrored his ultimate determination of plaintiff's RFC. (T. 142-43). The VE testified that, based on his professional experience, there were a series of jobs available in the national economy that an individual with that RFC would be able to perform. (T.143-44). The ALJ relied on this testimony at step five. (T. 21-22). Because this court has found that the ALJ's RFC determination was supported by substantial evidence, it also finds that the ALJ's determination at step five, and the ultimate determination of disability, were similarly supported by substantial evidence.

Plaintiff's brief suggests that the ALJ's RFC and his hypothetical question to the VE failed to adequately account for plaintiff's documented difficulties with math. (Pl.'s Br. at 22-23). However, the three unskilled light work jobs identified by the VE in response to the ALJ's questioning were housekeeping cleaner, inspector, and packager. (T. 22, 143-44). Each of these jobs require, at most, a mathematical development level of 1.[9] *See Dictionary of Occupational Titles* ("DOT"), Cleaner Housekeeping, 1991

---

[9] Level 1 mathematical development entails the ability to add and subtract two digit numbers; multiple and divide 10's and 100's by 2, 3, 4, 5; perform the four basic arithmetic operations with coins as part of a dollar; perform operations with units such as cup, pint, quart,

WL 672783; DOT, Paint-Spray Inspector, 1991 WL 680249; DOT, Inspector and Hand Packager, 1991 WL 683797. Plaintiff's IEP indicated that her math skills were at least at the fifth grade level (T. 332), so she would be able to meet the associated mathematical demands of these jobs. *See Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3732815, at *8 (E.D. N.C. July 6, 2012) ("In any event, mathematical development level 1 corresponds to no more than a fourth-grade level of mathematical ability.") (collecting cases). Therefore, to the extent that the ALJ erred by not referencing plaintiff's math skills in his RFC and the resulting hypothetical question to the VE, such error was harmless. *See Ortiz v. Colvin*, 298 F. Supp. 581, 590 (W.D.N.Y. 2018) (omitting a limitation from the RFC finding is irrelevant when the jobs the ALJ relies on at step five do not require activities affected by that limitation) (collecting cases).

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:     February 11, 2019

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

inch, foot, yard, ounce, and pound. *See* DOT, Appendix C, Components of the Definition Trailer, Part III, available at https://occupationalinfo.org/appendxc_1.html#III.